Good morning, Your Honors. May it please the Court. Lisa Brevard on behalf of Petitioner Francisco Javier Flores Medina. At this time, I would like to reserve three minutes for rebuttal on behalf of my colleague, Kendra Tobey. Flores Medina has endured persecution in Mexico as a transgender person who suffers from mental illness. Because of the abuse and beatings she endured, she fears for her life to return to that country. The BIA committed reversible legal error in analyzing her claims when it conflated sexual orientation and gender identity by not once discussing her transgender identity in its order. I will begin by explaining that separate analysis mandated by Avendano-Hernandez. Before you go into the substance, I just want to ask if Ms. Flores properly alleged her basis for relief based on her transgender identity that you now assert. It seems like in her briefing she makes a reference to issues affecting transgender individuals, but I couldn't tell if she in fact stated that she was transgender. Was this reference sufficient for the BIA to conduct an in-depth analysis or do more than what they did? Yes, Your Honor. On AR-1249 of the record in Flores Medina's handwritten asylum application, she identified as a transgender wife. Additionally, at AR-512 in her first appeal to the BIA, she identified herself as a male and female individual, putting the BIA on sufficient notice to evaluate her claims under that rubric. Thank you. Avendano-Hernandez v. Lynch, which directly governs this case, mandated a separate analysis pertaining to gender identity when an applicant identifies as transgender. This court stated on page 1082 of that case that, quote, Despite the instruction of this court, the BIA not only did not conduct a separate analysis, it did not even mention her transgender identity in its order. Had it conducted that analysis, it would have shown that although Mexico has taken some steps, such as legalizing gay marriage, these protections do not extend to the daily life of a transgender person living in Mexico. In fact, in Avendano-Hernandez, this court stated that laws recognizing same-sex marriage may do little to protect a transgender woman from discrimination, police harassment, and violent attacks in daily life. Do you think there's a difference in the facts as to transgender identity in, I think it's Avendo and the facts here? In Avendo, that person was undergoing all sorts of medical treatment, hormone treatment, that sort of thing. None of that occurs in the record here, does it? No, Your Honor, not in regards to hormone treatment. However, Flores Medina has dressed as a woman and does dress as a woman and was dressed as a woman significantly the night that she was targeted in 2010 in Mexico. So that raises a question. If you're concerned about how authorities might react to transgender persons in Mexico, why would you go to Tijuana to a gay bar dressed as a woman? And wasn't he or she a performer in drag? Your Honor, Flores Medina has identified that she does dress sometimes for entertainment. She also has identified in those record citations I cited that she identifies as transgender. The record does not state why she took the trip. However, when she did, she was targeted, and the BIA did not take into consideration that at least one central reason for that was her transgender identity. Let me ask you, because I wanted to talk about the claim of past persecution based on the Mexican police's actions in arresting, detaining, and then beating Ms. Flores in Tijuana. I guess my question is how do we know that any of those actions which might constitute persecution were motivated by Ms. Flores' sexual orientation or transgender identity? It seems, at least from my review of the papers here, that the police were at least initially motivated to arrest Ms. Flores because she was causing a disturbance, which seems like a legitimate reason not motivated by a protected ground. Then the police go on to detain her and beat her, but also it seems the police were in part motivated by extortion and pecuniary gain, which are also not the basis linked to a protected status or ground. So is the record clear enough for us to know that the police detained and beat her on account of her sexual identity or orientation? Do we need any more evidence here? No, Your Honor. The most compelling piece of evidence is in Flores Medina's own words. She was deemed credible in this case, and in her asylum application, she stated in response to why she fears harm or mistreatment, quote, I was arrested, assaulted by Tijuana police September 3, 2010, because I was dressed as a woman, in her words. And the BIA overlooked that evidence. Under INS v. Elias Zacharias. Was any of that line of testimony developed during trial? Your Honor. Or in an affidavit of any sort? So that statement in itself was in her asylum application. She did state in her testimony that she was dressed as a woman at the time that the attack occurred. That's at AR 1143 and 1146 of the record. And then if I could just ask you about Ms. Flores' incident with her classmate. There was some incident with the classmates. Did her school administrators intervene? I thought they did. And so that wasn't government sanctioned, was it, or something unable to be controlled by the government? Your Honor, although the school officials did attempt to intervene to separate the children from her, she did have to receive hospital treatment approximately six times. She suffered a burned foot, broken hand. So just by the severity of her injuries indicating the unable to control. And is there a case that you cite, too, with similar facts? Your Honor, not that mirrors those facts from the school incidents. We would say, too, in Chan v. INS, although the facts of the case were different, the case states that physical harm has consistently been treated as persecution. But significantly, primarily looking to the 2010 incident, the BIA overlooked that probative evidence as to motive and did not conduct a mixed motive analysis. And therefore, the BIA's conclusion in that regard is not supported. Do we have any cases that say that transgender people are members of a particular social class within the meaning of the immigration law? Your Honor, I would point to, well, it specifies that the social group would be decided under asylum withholding of removal or CAT. In that passage I quoted, I know there is another case that has addressed, if we could perhaps attempt to cite to it on rebuttal, I can't recall the name of it as far as distinguishing that particular social group, but it was outlined in On the Donna. So it is held that transgender people are members of a particular social group within the meaning of the relevant provision of the INA? Your Honor, to clarify my statement, beyond Avendano Hernandez, if there is any additional case law, we would have to look to try to identify that at rebuttal. Was that an issue in Avendano? Your Honor, it was discussed. Her transgender identity was discussed because she identified as transgender. And then while it was a CAT case, it was held by this court that the transgender identity would be identified separately in looking at asylum withholding of removal and CAT claims. Okay, thank you. Your Honors, because of the BIA's failure to employ the Avendano Hernandez analysis, we ask that at a minimum this court vacate the BIA's order and remand with instructions to conduct that proper analysis. Additionally, You're not appealing the determinations by the BIA that the persecution was not based on sexual orientation as to homosexuality or on schizophrenia? No, Your Honor, we are appealing that the BIA's determinations regarding asylum and that the 2010 attack was not on a protected ground is not supported by substantial evidence, and additionally that the BIA's conclusion that Flores Medina would not face a well-founded fear of future persecution For homosexuality and for schizophrenia? Based on sexual orientation and transgender or just one or the other of both? Your Honor, in regards to the past persecution, it would be through a mixed motive lens because primarily that she would have been perceived as transgender. She was also experiencing a schizophrenic episode at the time. But those are the primary causes that we are protected groups. You realize we would have to be compelled by the evidence to supplant the decision of the BIA as to past persecution on homosexuality and mental defect grounds, and you think that the evidence isn't sufficient for the BIA to have found that? Your Honor, yes, because the BIA did not conduct a comprehensive analysis into those matters. With mental illness, for example, the BIA did not look at the past persecution incident from a mixed motive lens. So they concluded that it was not on account of a protected ground, but because of bribery. Actually, to that point, looking at AR 1138, Flores Medina had identified that she was not extorted for money until after she was subjected to this brutal attack over a four-hour period. Therefore, because of the BIA's failure to look at what she endured from a mixed motive perspective and failure to separately analyze her transgender identity as required by Avendano-Hernandez, the conclusions are not supported. Your Honor, if there's no further questions, I would like to reserve the remainder of my time for rebuttal. Thank you. Good morning, Your Honors. May it please the Court. Michael Heiss on behalf of the Respondent and the Attorney General of the United States. Petitioner failed to exhaust all of these claims before the agency that are before the Court now. Petitioner now states that Petitioner dresses as a woman. That's cross-dressing. That's not a transgender claim. And while he may have mentioned previously to have, in some ways, to being a transgender wife, he didn't develop that claim, specifically before the immigration judge, when asked about the documents that he submitted. Let me ask you a question. Are you factually disputing that Flores identifies as a transgender? Based on the record before this Court, yes, Your Honor. So if you don't accept that or believe that Flores is transgender, what would you have this Court do? Are we to assume she's not transgender? Should there be a factual determination of that issue? The question is, what was the record that was presented to the agency? But you just heard all of the references to the record that your colleague, Ms. Brevard, gave. She said, I mean, I didn't write them all down, but I think it was AR 1249. Yes. She identified as a transgender wife. The other one was AR 512, and it was a similar thing. I'm unclear. So how are you saying that that was not referenced or raised below? The question is, is it substantial evidence to support that claim? Is there enough beyond those two isolated statements? And, yes, those are there. The government is not disputing that that claim was mentioned, but was it sufficiently developed to support this entire type of analysis, the differentiated analysis of Avendando-Hernandez? That, in fact, the immigration judge conducted anyway. But what we have here is Petitioner offered evidence. Well, I mean, I guess under Avendando-Hernandez v. Lynch, it seems to clearly hold the BIA must consider a petitioner's transgender identity separately from one's sexual orientation or any other claim. The BIA didn't do that, correct? Because the BIA was not called upon to do that, and that's the other point. What we have here is an immigration judge's extensive decision, which did reach the Avendando-Hernandez question as to the cat claim, but as to the asylum claim. But don't we consider, I mean, we have pretty solid case law that we construe pro se's petitioner's briefing liberally or why wasn't under that standard Ms. IJ's discussions on issues affecting transgender individuals enough to put the BIA on notice here? The question is into what category those were discussed. Before the immigration judge, the immigration judge reached the Avendando-Hernandez analysis as to cat eligibility because the immigration judge found petitioner ineligible for asylum as an alien convicted or that failed to demonstrate that he was not convicted of an aggravated felony because of an arson conviction. The judge then found he was ineligible for withholding of removal because the arson conviction constituted a particularly serious crime. So the analysis wasn't needed at the immigration judge level because he was ineligible. The immigration judge doesn't need to engage in assuming arguendo analysis at that point. The judge can, but there's no requirement that the judge get into the asylum and withholding questions if the alien is simply not eligible for that release. What's your best case for that? For which? For what you just said right now that I guess any case out there that says just a reference in a pro se petition was not sufficient to put the BIA on notice and the BIA didn't need to consider that. It seems like most of these cases where this comes up when it's identified, the BIA has dealt with it or been asked to deal with it. There's no, the particular factual scenario of this case is such that the immigration judge was not asked to reach these questions. The immigration judge was asked, was ultimately left with deciding whether or not the alien was eligible for cat protection. So the judge did not get into asylum eligibility in terms of persecution, past persecution, or a likelihood of future persecution on account of a protected ground because the alien was not eligible for it. So cases where the alien makes some kind of acceptable allegations. Because the arson, right? Right. Well, that wouldn't bar the cat relief, would it? Correct. And what you're saying is that the IJ addressed a transgender status on the cat as to cat. Yes. And what does the BIA do? The BIA was called upon. There were two issues raised to the board. This is administrative record pages eight through 13. In that brief, pro se brief from the alien, and yes, pro se briefs are construed liberally. The only two issues that were raised were whether or not the immigration judge properly considered how his competent, easy for me to say competency issues affected his ability to present his case as well as his eligibility for cats. So yes, his cat eligibility was presented, but none of these issues that are being raised now, such as mixed motive analysis, particular social groups, and this separate Avendando Hernandez analysis as to asylum and withholding, that was not raised to the board. So to fault the board for not... But the BIA did consider the asylum and withholding. It didn't decide whether the crime was a bar, I thought. Because petitioner did not ask the board to do so. Petitioner waived those issues by not raising them before the board. The board isn't going to address questions that it doesn't have to. It did petitioner essentially a favor here by saying, even if you're eligible for asylum, you failed to demonstrate that you qualify for it. But the BIA considered past persecution. Yes. Okay. By citing, and that's where this gets a little muddy. It does, and so when it gets a little muddy, I mean, well, can you address this alleged incident of past persecution based on the Mexican police detaining and beating Ms. Flores? How do we know that the police were not in part motivated by her sexual orientation or transgender identity after the arrest? The question is whether or not substantial evidence supports the agency's conclusions. And what we have here are subjective allegations by the petitioner that he was targeted because of his either sexual orientation or his transgender status. The record, however, and by his own admissions, was that he was picked up by the police because he was, quote, acting crazy in the street. And he conceded that the police can, in fact, arrest people acting crazy in the street. It's important to note that the police were not trolling around looking, they weren't hanging outside of his club. I understand, and the police, you know, had a valid reason to first arrest her that could not, you know, perhaps not based on any protected ground. But then she was detained and beaten for four hours. So I guess even if the police were motivated by extortion, couldn't the police have been motivated by extortion and by a protected ground? I think our case in Barajas versus, or Barajas-Romero versus Lynch states that the protected ground needs to be one reason, but not the main reason for, or the only reason. And so how do we know the police weren't motivated in part by a protected ground that Flores asserts? That's a mixed mode of analysis. And, again, that's an analysis that the agency was not called upon to engage in here. Taking a step back to the immigration judge's analysis on this point, the immigration judge was analyzing this matter as to cat protection eligibility. Cat protection doesn't require a nexus to a protected ground. So the one central reason standard simply doesn't apply. But the BIA did consider or pass persecution, correct? Right. So what the board was doing here was looking at the factual record and reaching that conclusion, and in doing so, cited the immigration judge's factual findings. And what the board found, and that substantial evidence supports, is that while Petitioner might subjectively believe that he was targeted because of his sexual orientation, the record simply doesn't confirm that. And that's by his own concession that it was because he was acting out in the street. He fell down in the street. He had perhaps mixed alcohol and his mental health drugs or some combination thereof, and that caused this to happen. The police weren't looking for him. He also provides bald speculation that the police were throwing homophobic slurs at him. There's nothing in the record besides a statement of counsel to support that. It's his own evidence. It's his own concession that he was, quote, acting crazy in the street as to why the police arrested him. When asked, did they say anything to you, he was asked three times. The immigration judge asked him on three separate occasions, did they say anything to you? And he said nothing about it being because of transgender status. The only statement that comes close is that they told him that there are laws and that what he was doing was illegal. There's nothing specific about him being targeted for being either homosexual or transgender. He also claims that he was the only one targeted. The evidence simply doesn't support that. I believe there was a question earlier. My opponent responds that the record doesn't state why the petitioner took this trip. That's simply not true. Administrative record 114647, it states he purposely went to Mexico to attend this party where he was appearing, yes, in drag as a performer. There's no evidence to support that he indeed identifies as a woman. The record is simply not even close compared to Abendando Hernandez in terms of what Abendando Hernandez experienced throughout her lifetime, throughout everything that Abendando experienced. What petitioner experienced is, yes, the unfortunate circumstances of being a homosexual in Mexico. Yes, that results in discrimination and harassment. It's not ideal. Is that persecution? Is that torture? And that's a very specific point. Mr. Hestey, maybe I'm missing your main pitch, but let's see if I understand it. What you're saying is that on this appeal from the BIA, the petitioner did not exhaust the issues which she is now claiming are sufficient for a grant of petition and a remand. Is that it? Correct, Your Honor. And she failed to raise her persecution on the protected grounds of a member of a particular social group before the IJ and before the BIA. Before the IJ, this issue was, again, construing pleadings favorably and all the evidence favorably. In terms of a pro se litigant, yes, those issues were raised, not all of them. Specifically, these social group issues were not specifically raised, at least to this degree, or even naming what group or of what groups. Whatever was raised before the IJ, before the BIA, all she raised was her competency and the cat denial, which does not require a nexus. Correct, Your Honor. So, therefore, she didn't exhaust at the BIA level. Correct. All right. Let me ask you, because you just referenced something about, you know, the BIA was not called upon to do this analysis, I guess. Is that what you're saying on the persecution? Yes. But I guess my question, if the BIA does undertake the analysis of an issue as a favor, I guess, that you said in your argument right now, doesn't it need to get it right and be correct? Of course. Okay. And it did so. How? The board considered all of the facts as found by the immigration judge and applied the law, specifically citing the immigration judge's extensive Avendando-Hernandez analysis, that's the judge's decision at pages 11 through 14, where the judge does get into that distinction between homosexuals and transgenders. It doesn't really analyze under transgender. The BIA does it. By citing the immigration judge's decision on that point, yes. Petitioners, one of petitioners, a theme running throughout petitioners' briefs are that only the board's decision is probably before this court. That's simply not the case. The board cited the immigration judge 39 times in its decision. Wasn't there in the record a great deal about how transgender people are treated in Mexico? Yes. So doesn't that raise the issue of transgender? And it wasn't addressed by the BIA, was it? The board did address it. The board, I believe it's the second page of the board's decision, has a whole paragraph where the board is citing those specific pages from the immigration judge's decision, pages 11 through 14, and it specifically references the LGBT community. The T in LGBT is transgender. The board was specifically considering this question and affirmed the analysis by the immigration judge, essentially extending it to an asylum and withholding context. I have that page before me. Can you tell me which paragraph you're referring to? I believe it's the first full paragraph from the top. Sorry, even assuming? Yes. But the BIA did not explicitly adopt the reasoning of the IJ as to force as transgender. The board did not use the word adopt, no, but citing the immigration judge. That's why we're here, though. I think that's why we're here. The petitioner would appreciate that, yes. But the board cited the immigration judge. We're here to discuss whether the petitioner appreciates it or not. You, on behalf of the government, have to respond to their allegations. And the petitioner has a right to appeal. It's not a favor that we're doing for the petitioner. The petitioner also has an obligation to present his claims before the board.  And the BIA has an obligation, does it not, to follow the law here. And I believe under Avendando we have stated that the BIA has to address or explicitly address the transgender claim. And here the BIA did not explicitly adopt the reasoning. You make all these references or you point out all these references the BIA did to the IJ. But I don't believe the BIA explicitly adopted the reasoning of the IJ as far as this transgender claim. And you just said that it does not. Is that correct? The word adopt, no, does not appear. So you say implicitly it's adopting it. In Medina, Lara, this court noted that even where the board incorporates the immigration judge's decision without citing matter of Burbano, which is the classic case talking about affirming adopting. Is that before or after Avendando, Medina? Long prior. What's that? Prior, I believe. Okay. And so it seems like Avendando would control here. And it says that the BIA must separately analyze a petitioner's status as a transgender person. There are two separate questions, Your Honor. The question of which decisions are before the court. Medina, Lara was talking about whether or not the immigration judge's decision and the board's decision are before the court. And that's critical here because, again, the immigration judge was not called upon to engage in a specific analysis as to nexus to a protected ground, the one central reason standard. All those things were not before the immigration judge because the immigration judge found that the alien was ineligible for asylum because of the arson conviction and ineligible for withholding a removal for the same reason. So the absence of those analyses here, but the immigration judge discussing those as to cat protection were then discussed by the board and cited as a reason for denying asylum and withholding a removal, only assuming, arguendo, that petitioner was eligible for them. Also noting the petitioner did not raise that point to the board for it to discuss it anyway. So to fault the board for not doing something that it wasn't called upon to do doesn't comport with how simply immigration cases work. Yes, the board has to follow the law, doing so here by citing the immigration judge's analysis, which was extensive, three full pages discussing what was before the judge to reach that point. I don't find anything in the BIA paragraphs that you've indicated. I might be citing the wrong paragraph, Your Honor. It says anything about LGBT or transgender. Administrative record page four. I might have cited page three. I believe it's page four. Yes, you did. Second paragraph from the front. All right, yeah, the second paragraph, page four. Okay. My apologies. Third page of the board's decision. I think you've exhausted your time. I have, Your Honor. A brothel time? Appreciate it. Thank you, Your Honors. Would you address the failure to exhaust issue? Yes, Your Honor. Good morning, Your Honors, and may it please the Court. Kendra Tovey also on behalf of Flores Medina. The government contends that the Avendano-Hernandez issue was required to be exhausted by a pro se petitioner before the board. However, under 8 U.S.C. 1252 A2D, this court always has jurisdiction to review questions of law. The application of the Avendano-Hernandez standard, as outlined by this court in that case, is a pure question of law. Whether or not the BIA properly analyzed the transgender claim separately. That's not the issue. The issue, as I understand it, is whether it was properly raised to the BIA in the notice of appeal filed by Flores Medina. It was not addressed in the notice of appeal, Your Honor, because Flores Medina was not required to do so because it is a question of law. But even if this court does not accept that proposition, the BIA was on sufficient notice at AR 27 when the IJ did address the Avendano-Hernandez question and went through that analysis and attempted to do that analysis properly, however failing to do so. But the BIA never addressed Flores Medina's separate transgender identity. And for that reason, the BIA erred. This court in Avendano-Hernandez required that the BIA does not conflate the two identities. And any conflation of those identities is a fundamentally flawed analysis. But, pardon me, I took the position of the government to be that if the only issues raised in the notice of appeal was the denial of persecution because of competency and the denial of cat denial, which doesn't require annexes, then the issue was not raised on appeal even though it was raised in trial. Your Honor, the Avendano-Hernandez question of whether or not the procedure outlined in Avendano-Hernandez In other words, you're saying it's just a question of law, but he didn't raise the issue. The IJ erred in a question of law. So if he didn't raise that in his notice of appeal, then why was it before the BIA? Why do we say the BIA made a mistake in not analyzing it? Because, Your Honor, this court in Avendano-Hernandez required it of the BIA to do that separate analysis. But it was raised in Avendano. As I understand the position of the government, the Avendano issue, the issue of transgender, wasn't raised in the notice of appeal. Your Honor, I see my time has expired. May I answer your question? Flores Medina, under the law, was not required to put that legal argument into the notice of appeal as a pro se petitioner. That's a different question. All right. What's your authority for that? For that, Your Honor, I apologize. I believe, I apologize, Your Honor, I don't have that case site right in front of me. But the statute does not require Flores Medina to exhaust that issue, and the Ninth Circuit does have jurisdiction to cover questions of law. And if I could refer you to 1252A2D, it specifically says that nothing in the immigration statute... We have the jurisdiction to determine issues of law and constitutional issues, right? Yes, Your Honor. But not if they're not exhausted in the BIA. We review the BIA's actions. If it's not properly before the BIA, how can we fault the BIA for making a wrong decision? Your Honor, it was properly before the BIA, even if it's not in the notice of appeal, because they were on notice in the IJ's decision at AR 27 when the... So your position is that in a pro se appeal, anything that was discussed before the IJ is necessarily an issue before the BIA, correct? Not necessarily, Your Honor. The issues that were exhausted before the BIA under Vicara, IOLA, the BIA addressed all the asylum, withholding of removal, and CAT claims on the merits, and therefore those were properly before the BIA. The question of whether the BIA analyzed those properly through the lens of the transgender identity is a question of law, which the BIA was required to do under this court's holding in Avendano-Hernandez. So your argument is that it was raised as sufficiently as would be required for pro se petitioners? Yes, Your Honor, and this is a procedural error that we're dealing with under the Avendano-Hernandez. And that's Vicara, IOLA versus McKaysee? Correct, Your Honor. And Vigoroa versus McKaysee? Correct, Your Honor. And then as a result, if I understand your argument, then it's raised sufficiently as would be required for pro se, then we have to address this transgender as a matter of law? Yes, Your Honor, and the question is not whether or not Flores Medina is transgender. That issue was properly before the BIA, and they were sufficiently on notice to know that that requirement in Avendano-Hernandez was required. And if I may quote from Avendano-Hernandez, this court required that not the IJ, but the BIA consider, quote, the unique identities and vulnerabilities of transgender individuals in all applications for asylum, withholding of removal, and cat relief. And that was a direct instruction to the BIA, which they ignored, and now the government seeks to sidestep it on exhaustion grounds. And for those reasons, we would ask that at a bare minimum this court please vacate the BIA order and remand for that proper analysis. Thank you very much. Thank you, Your Honor. And that concludes the presentation for this morning and the cases for this week. So the court will be adjourned. Thank you. All rise. Hear ye, hear ye, all persons having had business with the Audible of the United States Court of Appeals for the Ninth Circuit will now depart. So this court for this session now stands adjourned.
judges: Bea, Murguia, Molloy